**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL KOHLHAGEN,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF WETHERSFIELD, WETHERSFIELD BOARD OF ETHICS, JOHN CASCIO, GINA DEANGELO, PENNY STANZIALE, TRISTAN STANZIALE,<br><br>Defendants. | : | No. 3:10cv1295 (MRK) |

**RULING AND ORDER**

This case arises from the Wethersfield Board of Ethics' investigation into possible misconduct by Plaintiff Michael Kohlhagen, the former Superintendant of the Wethersfield School District. Currently pending before the Court are Mr. Kohlhagen's Motion for Expedited Partial Summary Judgment [doc. # 26] and Defendants Town of Wethersfield and Wethersfield Board of Ethics' Cross-Motion for Summary Judgment [doc. # 35]. For the reasons set forth below, Mr. Kohlhagen's Motion for Expedited Partial Summary Judgment [doc. # 26] is DENIED and Defendants' Cross-Motion for Summary Judgment [doc. # 35] is GRANTED.

**I.**

The Court assumes the parties' familiarity with the facts of this case, and sets forth only those facts that are necessary for resolution of the pending motions. The Town of Wethersfield and the Wethersfield Board of Education hired Mr. Kohlhagen as Superintendant of the Wethersfield School District on May 22, 2007. Mr. Kohlhagen agreed to a three-year contract, to expire on June 30, 2010. On June 17, 2009, the Board of Education voted 7-2 to award Mr. Kohlhagen a $5,000 Incentive Bonus under the contract, and also to extend Mr. Kohlhagen's

contract by one year, to expire on June 30, 2011.

On November 4, 2009, the Town held a municipal election and the Town's citizens elected four new members to serve on the Board of Education. The four new members were Defendants John Cascio, Gina DeAngelo, Penny Stanziale, and Tristan Stanziale. On November 9, 2009, Mr. Stanziale demanded that Board of Education member Stacey Hodges, who had been reelected on November 4, immediately resign from her position. When Ms. Hodges refused to resign, Mr. Stanziale, along with Mr. Cascio, Ms. DeAngelo, and Ms. Stanziale, filed an ethics complaint with the Wethersfield Board of Ethics. The ethics complaint alleged that Ms. Hodges and Mr. Kohlhagen had conspired to change one of Ms. Hodges' son's high school grades, and also to have the Town pay for the son's post-graduation summer school class. The complaint further alleged that Ms. Hodges had arranged for Mr. Kohlhagen to receive the $5,000 bonus in exchange for his agreement to change the son's grade and to arrange for the Town to pay for the son's summer school class.

The four new members of the Board of Education re-filed their complaint on November 20, 2009 because of an initial procedural defect. After the second filing, the Board of Ethics – which is composed of members appointed by the Town Council – performed an initial investigation and determined that there was probable cause to undertake a full investigation of the complaint against Ms. Hodges and Mr. Kohlhagen. The Board of Ethics then began a more extensive investigation. That investigation remains ongoing to this day.

On April 28, 2010, Mr. Kohlhagen entered a Separation and Release Agreement with the Board of Education. The Agreement relieved Mr. Kohlhagen of his responsibilities as Superintendant and his authority to act on behalf of the Board of Education. Under the Agreement, Mr. Kohlhagen will continue to receive his full salary through June 30, 2011.

However, he has an obligation to use his best efforts throughout that period to find new employment. Should he find new employment, the Board of Education's obligation to pay his salary will be offset by whatever salary he earns in his new employment.

On May 5, 2010, Mr. Kohlhagen filed a motion to dismiss the Board of Ethics' charges against him. Mr. Kohlhagen argued that because he resigned from his position as Superintendant and was no longer employed by the Town, the Board of Ethics no longer had subject-matter jurisdiction over him. The Board of Ethics denied the motion.

Mr. Kohlhagen filed this action in the Connecticut Superior Court on August 2, 2010. Defendants removed the action to this Court on August 12, 2010 because Mr. Kohlhagen's Complaint [doc. # 1] asserted a federal constitutional claim. Mr. Kohlhagen continues to assert in this action that the Board of Ethics has no authority to continue investigating him. His assertion is based on a Connecticut statute, *see* Conn. Gen. Stat. § 7-148h, and on various Town ordinances. *See* Wethersfield, Conn., Code §§ 10-65, -70, -71, and -73.

Mr. Kohlhagen filed the pending Motion for Expedited Partial Summary Judgment [doc. # 26] on September 16, 2010. Mr. Kohlhagen moves for judgment only on the First Count of his Complaint, which seeks a declaratory judgment that the Board of Ethics has no authority to continue investigating Mr. Kohlhagen. The Town and the Board of Ethics filed their Cross-Motion for Summary Judgment [doc. # 35] on September 27, 2010. That motion also relates to the First Count of the Complaint only.

**II.**

The standard of review this Court must apply on a motion for summary judgment is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment is appropriate where there are no disputed issues of fact and the only disputed issues are purely legal in nature. *See Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034, 1039 (2d Cir. 1995).

**III.**

As both parties correctly recognize, there are no disputed issues of fact regarding the First Count of Mr. Kohlhagen's Complaint or the two pending motions for partial summary judgment. It is undisputed that Mr. Kohlhagen was Superintendant of the Wethersfield School District, was accused of misconduct, resigned from his position as Superintendant, and continues to be investigated by the Board of Ethics. The only issue presented by the pending motions is whether the Wethersfield Board of Ethics has the authority to continue investigating Mr. Kohlhagen. That is a purely legal issue that the Court may properly resolve at summary judgment. *See id.*

Whether the Board of Ethics has the authority to continue its investigation of Mr. Kohlhagen is a state-law issue, not a federal-law issue. The Court must therefore proceed with careful regard for the federal courts' special role in resolving state-law issues. *See, e.g.*, *Austen v.*

*Catterton Partners V, LP*, --- F. Supp. 2d ----, 2010 WL 3023813, at *4 (D. Conn. 2010). The Court's analysis must be guided by Connecticut case law, *see Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 82 (2d Cir. 1995), and must "give the fullest weight to pronouncements of the state's highest court . . . while giving proper regard to relevant rulings of the state's lower courts." *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir. 1999). To the extent that there is ambiguity in the established state law, this Court's role "is not to adopt innovative theories that may distort established state law," *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001), but instead to "predict how the state's highest court would resolve" that ambiguity. *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 297 (2d Cir. 2000).

Only one Connecticut Supreme Court decision is directly relevant to the issue presented here. In *Statewide Grievance Committee v. Burton*, 282 Conn. 1 (2007), the court considered whether the Connecticut Superior Court had the authority to adjudicate a complaint of professional misconduct against a former attorney, who had already been disbarred for unrelated misconduct that occurred after the events alleged in the complaint. *See id.* at 2-3. Because a Connecticut statute clearly authorized trial courts to adjudicate complaints of professional misconduct by attorney, the *Burton* court had little difficulty determining that the trial court had subject-matter jurisdiction over the complaint. *See id.* at 7 ("In the present case, the trial court recognized that it possessed the requisite authority to adjudicate disciplinary matters involving attorneys."). The more difficult issue for the *Burton* court was whether the controversy was still justiciable in light of the former attorney's disbarment. *See id.* at 7-19.

Based on the Court's examination of *Burton* – which, the Court emphasizes, is the only directly relevant Connecticut Supreme Court decision – the Court predicts that the Connecticut

Supreme Court would resolve the issue presented here by undertaking a two-part inquiry. First, the Court predicts that the Connecticut Supreme Court would examine the Board of Ethics' authorizing statutes to determine whether the Board of Ethics has subject-matter jurisdiction over the type of controversy at issue here. *See id.* at 7 ("Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it."). Second, the Court predicts that the Connecticut Supreme Court would inquire into whether the particular controversy at issue here remains justiciable in light of Mr. Kohlhagen's resignation. *See id.* ("Justiciability involves the authority of the court to resolve actual controversies."). The Court proceeds with that two-part inquiry below.

**A.**

Determining whether the Board of Ethics has jurisdiction over the type of controversy at issue here requires this Court to interpret state statutes and local ordinances. *See* Conn. Gen. Stat. § 7-148h; Wethersfield, Conn., Code §§ 10-65, -71, and -73. In the absence of controlling authority regarding the interpretation of a state statute, this Court must interpret it according to the rules of construction that the Connecticut Supreme Court would employ. *See Morenz v. Wilson-Coker*, 415 F.3d 230, 236-37 (2d Cir. 2005); *see, e.g., Austen*, --- F. Supp. 2d ----, 2010 WL 3023813, at *7. Pursuant to Connecticut General Statutes § 1-2z, the Supreme Court of Connecticut must consider legislative text first, and may only consider extrinsic evidence of statutory meaning after making a threshold determination that the plain text of a statute is ambiguous or yields an absurd result. *See Bell Atlantic Nynex Mobile, Inc. v. Comm'r of Revenue Servs.*, 273 Conn. 240, 249-50 (2005). "A local ordinance is a municipal legislative enactment and the same canons of construction . . . use[d] in interpreting statutes are applicable to ordinances." *Hall Manor Owner's Ass'n v. City of West Haven*, 212 Conn. 147, 154 (1989);

*see, e.g.*, *Goodspeed Airport, LLC v. Town of East Haddam*, 115 Conn. App. 438, 455-56 (2009) (examining the text of an ordinance first and giving effect to the ordinance's plain meaning).

The Connecticut Supreme Court has never definitely interpreted any of the provisions at issue here. The Court must therefore begin by examining the texts of those provisions. *See, e.g.*, *Austen*, --- F. Supp. 2d ----, 2010 WL 3023813, at *8. Based on the plain meaning of the relevant provision of the General Statutes, the Court concludes that the Connecticut legislature has authorized local boards of education to exercise subject-matter jurisdiction over the type of controversy at issue here. The General Statutes authorizes municipalities to enact ordinances to create local ethics boards and empower them to investigate allegations of "unethical conduct . . . levied against any . . . employee of such town." Conn. Gen. Stat. § 7-148h. The Connecticut legislature could hardly have been more explicit in its grant of authority to municipalities. *See Simons v. Canty*, 195 Conn. 524, 530 (1985).

The Court further concludes based on the plain meaning of the relevant Wetherfield ordinances that the Board of Ethics has subject-matter jurisdiction over the type of controversy at issue here. The Town enacted an ordinance creating the Board of Ethics pursuant to the legislature's grant of authority. *See* Wethersfield, Conn., Code § 10-71 ("There is hereby created a Board of Ethics which shall be charged with the administration of the Code of Ethics."). The Town enacted a different ordinance to empower the Board of Ethics to "receive complaints from any person of any violation of the Code of Ethics," and to hold hearings regarding such complaints. *Id.* § 10-73. A related ordinance specifies that "the Superintendant of Schools" is a person whose conduct is governed by the Code of Ethics. *See id.* § 10-65. It is undisputed that at the time the Board of Ethics began its investigation of Mr. Kohlhagen's alleged misconduct, Mr. Kohlhagan was Superintendant of the Wethersfield School District. It is also undisputed that

the complaint against Mr. Kohlhagen relates to his performance as Superintendent.

It is thus clear – and even Mr. Kohlhagen agrees – that the Board of Ethics initially had subject-matter jurisdiction to investigate the claim against Mr. Kohlhagen. Mr. Kohlhagen's argument that his subsequent resignation divested the Board of Ethics of subject-matter jurisdiction misconstrues the language of the relevant provisions. Mr. Kohlhagen argues that under the plain meaning of those provisions, neither the General Statutes nor the Wethersfield Code authorizes the Board of Ethics to investigate misconduct by a *former* employee. But as the Court reads the text of § 7-148h of the General Statutes, that provision only requires that a target of an investigation be a municipal employee at the time that the initial *allegation* is levied. Nothing in the text of § 10-73 of the Wethersfield Code – which permits the board to receive and investigate *any* complaints of ethical violations – indicates that an investigation must cease when the target ceases to be a municipal employee. As this Court reads it, the Wethersfield Code only requires that the target of the investigation be a person whose conduct was governed by the local Ethics Code at the time he or she allegedly violated the Ethics Code. *See id.* § 10-65.

Mr. Kohlhagen's argument to the contrary misunderstands the nature of the subject-matter jurisdiction inquiry. As a general matter, whether a court or agency has subject-matter jurisdiction depends on the state of affairs existing at the time the court or agency's subject-matter jurisdiction is invoked. *See, e.g.*, *Hicks v. Miranda*, 422 U.S. 332, 354 (1975); *Ex parte Marshall*, 25 So.3d 1190, 1194 (Ala. 2009); *State v. Howell*, 107 Ariz. 300, 301 (1971); *Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo. 2010); *State v. Tomaskie*, 337 Mont. 130, 136 (2007); *In re Peoples*, 296 N.C. 109, 143 (1978). Although the Connecticut Supreme Court has apparently never directly so held, this Court predicts that the Connecticut Supreme Court would concur with that widely agreed-upon legal principle. The Court is not persuaded that the texts of

the relevant provisions of the Connecticut General Statutes or the Wethersfield Code alter that general presumption.

Mr. Kohlhagen's argument to the contrary is also inconsistent with numerous Connecticut court decisions, as well as with recent opinions of the Connecticut Attorney General. In *Burton*, the Connecticut Supreme Court expressed no doubt whatsoever regarding the trial court's subject-matter jurisdiction over a complaint against a former attorney, even though the authorizing statute only permitted the trial court to hear complaints against "attorneys." 282 Conn. at 2 n.1. In *In re Flanagan*, 240 Conn. 157 (1997), the Connecticut Supreme Court held that the state judicial review council could publicly censure a former judge, even though the authorizing statute only permitted the council to censure a "judge," *id.* at 159, and the Connecticut Attorney General has issued at least two different opinions to the same effect. *See* Conn. Att'y Gen. Op. No. 2007-032, 2007 WL 4476118, at *3; Conn. Att'y Gen. Op. No. 2007-030, 2007 WL 4303150, at *2. Finally, the Connecticut Superior Court has twice held that a public official's departure from office does not divest an ethics board of subject-matter jurisdiction over a complaint based on conduct that occurred while the official was in office. *See Serrani v. Bd. of Ethics*, No. CV-9212288, 1996 WL 93598, at *2-3 (Conn. Super. Feb. 15, 1996) ("*Serrani II*"); *Serrani v. Bd. of Ethics*, No. CV-92122888-S, 1992 WL 77145, at *4-8 (Conn. Super. Mar. 30, 1992) ("*Serrani I*"), *rev'd on other grounds*, 225 Conn. 305 (1993). Simply put, no Connecticut authority supports Mr. Kohlhagen's subject-matter jurisdiction argument.

**B.**

Connecticut courts recognize that subject-matter jurisdiction and justiciability, although closely-related, are separate concepts. *See Burton*, 282 Conn. at 6. A court may have subject-matter jurisdiction over a certain type of controversy, yet still not have jurisdiction over a given

case because the issue presented in the case is not justiciable. *See id.* at 7. As the Connecticut Supreme Court explained in *Burton*:

> Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. Justiciability involves the authority of the court to resolve *actual* controversies. Because courts are established to resolve actual controversies, before a claim or controversy is entitled to a resolution on the merits it must be justiciable.

*Id.* at 7 (quotation marks and citations omitted). The Court construes Mr. Kohlhagen's remaining arguments – namely, that there is no longer any legitimate purpose for the Board of Ethics' investigation of Mr. Kohlhagen and that the Board of Ethics' investigation of Mr. Kohlhagen is now moot – as justiciability arguments.

The Court predicts that the Connecticut Supreme Court would hold that the same justiciability standard that applies to Connecticut courts applies to municipal ethics boards when they act in their capacities as quasi-courts. Under Connecticut law, "justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." *Seymour v. Region One Bd. of Educ.*, 261 Conn. 475, 481 (2002). There is no dispute between the parties regarding the first and third requirements for justiciability in this case, nor could there be. There is an actual controversy regarding whether Mr. Kohlhagen violated ethical rules by changing a student's grade and footing the bill for the student's summer school class in exchange for a $5,000 bonus payment. The Board of Ethics is fully capable of resolving that controversy.

Although Mr. Kohlhagen does not dispute the second requirement for justiciability – the requirement that the interests of the parties to the conflict be adverse – the Court believes that a

brief comment regarding that requirement is necessary. Although the initial ethics complaint against Mr. Kohlhagen was filed by Mr. Cascio, Ms. DeAngelo, Ms. Stanziale, and Mr. Stanziale, the Court does not believe that the proper inquiry regarding the second justiciability requirement is whether Mr. Kohlhagen's interests are adverse to the interests of those four individuals. Those four individuals merely made an allegation to the Board of Ethics. Based upon that allegation, the Board of Ethics made its own independent determination that there was probable cause to investigate Mr. Kohlhagen's conduct. The Board of Ethics in turn is pursuing its investigation of Mr. Kohlhagen not for the purpose of advancing its own interests, but rather on behalf of the interests of the Town and its citizens. The relationship between the four individual defendants and the Board of Ethics is more like the relationship between a successful relator in a *qui tam* action and the Attorney General, *see, e.g.*, *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1400 (2010), than it is like the ordinary relationship between a plaintiff and a court. The Court therefore believes that the proper question here is whether Mr. Kohlhagen's interest in the matter pending before the Board of Ethics is adverse to the Town's interest, and the Court has little hesitancy concluding that it is.

All of Mr. Kohlhagen's arguments relate to the fourth justiciability requirement, which is that the adjudicating court or agency must be capable of resolving the controversy in a matter that will result in practical relief to the complainant. *See Seymour* 261 Conn. at 481. As discussed above, in the Court's view the relevant question is not whether the Board of Ethics is capable of resolving the controversy in a manner that will result in practical relief to Mr. Cascio, Ms. DeAngelo, Ms. Stanziale, and Mr. Stanziale. Instead, the relevant question is whether the Board of Ethics is capable of resolving the controversy in a manner that will result in practical relief to the Town and its citizens. The Court concludes that the Board of Ethics is capable of

resolving the controversy in a manner that will result in practical relief to the Town and its citizens.

Although the parties rely on different cases for their positions regarding the justiciability issue, the Court does not believe that there is any real conflict between the authorities cited by the parties. Mr. Kohlhagen principally relies on a case decided by the Hawai'i Supreme Court nearly forty years ago. *See Doe v. State Ethics Comm'n*, 53 Haw. 373 (1972). In *Doe*, the court held that Hawai'i's ethics commission had no authority to consider complaints, make investigations, or prosecute charges concerning an individual who was no longer employed by the State. *See id.* at 374-75. The *Doe* court's decision was premised on its interpretation of a statute, which it did not believe authorized any meaningful remedy that could be applied to a former State employee. *See id.* at 375. Defendants principally rely on the Connecticut Supreme Court's decision in *Burton*. *See* 282 Conn. at 1 (2007). The *Burton* court also looked to a statute to determine whether there was any meaningful remedy available against a former attorney. *See id.* at 14. In this Court's view, both *Doe* and *Burton* – along with all of the other cases cited by the parties – stand for the simple, common-sense proposition that a court should whenever possible look to statutorily provided remedial schemes to determine whether the fourth justiciability requirement can be satisfied.

Section 10-70 of the Wethersfield Code defines the remedies that are available to the Board of Ethics if it finds that a person governed by the Code of Ethics has committed an ethical violation. That Section provides:

> Violations of any provisions of this code should raise conscientious questions for the Governed Person concerned as to whether voluntary resignation or other action is indicated to promote the best interest of the Town. Violation may, upon determination by the Council, constitute a cause for *censure*, suspension, removal from office or *other appropriate legal proceedings*.

*See* Wethersfield, Conn., Code § 10-70 (emphasis added). Mr. Kohlhagen reads the portion of § 10-70 which urges ethical violators to voluntarily resign as a safe-harbor provision that ensures no further action can be taken following a resignation, but there is absolutely no textual support for that reading. It is true that it is no longer possible for the Board of Ethics to suspend Mr. Kohlhagen or to remove him from office, but the Court believes that under § 10-70, there are at least two remedies still available to the Board of Ethics should it ultimately find that Mr. Kohlhagen committed ethical violations.

First, the Board could censure Mr. Kohlhagen. Mr. Kohlhagen assumes that the Board of Ethics has no authority to censure a former employee, but there is no textual support for Mr. Kohlhagen's assumption. A censure is merely "[a]n official reprimand or criticism." Black's Law Dictionary 253 (9th ed. 2009). Nothing in the language of § 10-70 prevents the Board of Ethics from publicly reprimanding a former employee after his or her resignation. *Cf. In re Flanagan*, 240 Conn. at 159 (holding that the state judicial council could publicly censure a former judge). The Agreement Mr. Kohlhagen negotiated with the Board of Education – which, apart from the four newly-elected members who are Defendants here, is still composed of the same members who allegedly voted for Mr. Kohlhagen's improper bonus – prevents the Town from reducing Mr. Kohlhagen's salary. A public censure might therefore be an appropriate way for the Board of Ethics to provide at least some meaningful relief for the Town and its citizens.

Second, the Board of Ethics may be able to pursue "other appropriate legal proceedings" against Mr. Kohlhagen. At oral argument on the pending motions, Mr. Kohlhagen's counsel informed the Court that Mr. Kohlhagen intends to seek indemnification from the Board of Education for the legal fees he has incurred in defending himself against the pending ethics charges. *See* Conn. Gen. Stat. § 10-235. Under the Connecticut General Statutes, every local

boards of education is required to indemnify every employee "from financial loss and expense, including legal fees and costs, arising out of any claim, demand or suit initiated against [him] by reason of alleged maliciousness, wanton or willful act or ultra vires act . . . while acting in the discharge of his duties." *Id.* § 10-235(b). However, "[i]n the event such . . . employee has a judgment entered against him for a malicious, wanton or willful act in a court of law, such board of education . . . shall not be held liability to such . . . employee for any financial loss or expense . . . ." *Id.* It is conceivable that the Town may wish to pursue litigation against Mr. Kohlhagen to prevent him from obtaining indemnification. A report from the Board of Ethics finding that Mr. Kohlhagen's conduct violated the Code of Ethics would likely be admissible in such a proceeding regardless of whether it was initiated in state court, *see* Conn. Code of Evid. § 10-4 (contemplating that "a . . . report . . . recorded or filed in a public office" may be admissible"), or in federal court. *See* Fed. R. Evid. 803(8) (creating a hearsay exception for "reports . . . of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness").

Finally, the Court notes that the purposes of § 7-148h of the General Statutes and of the various relevant provisions of the Wethersfield Code would be frustrated if an employee or official could render an investigation non-justiciable simply by resigning from his or her position. The Court finds the Connecticut Superior Court's decisions in *Serrani I*, 1992 WL 77145, and *Serrani II*, 1996 WL 93598, to be particularly persuasive in that regard. As the *Serrani I* court reasoned, ethics boards "investigate[] the acts of public officials during their tenure; the fact that these officials may later become private citizens does not affect their past public activities." 1992 WL 77145, at *5. A government ethics investigation serves a

fundamentally different purpose than a civil lawsuit or a criminal prosecution: "A resolution of such an investigation serves the public interest by informing the public when a government official has been derelict in his or her duties toward the public." *Id.* The General Statutes and the various ordinances at issue here give the Town and its citizens a right to know whether any public employee has violated his duties and broken the public's trust. Although it may well be true that it is in the interests of all of the parties here to resolve the ethics complaint against Mr. Kohlhagen in an expeditious manner, it would be unusual, to say the least, if a public employee like Mr. Kohlhagen could unilaterally deprive the Town and its citizens of that right simply by resigning.

**IV.**

In sum, the Court concludes as a matter of Connecticut law that the Board of Ethics has the authority to continue its investigation of Mr. Kohlhagen. Defendants are entitled to judgment on the First Count of Mr. Kohlhagen's Complaint. Therefore, Defendants' Cross-Motion for Summary Judgment [doc. # 35] is GRANTED, and Mr. Kohlhagen's Motion for Expedited Partial Summary Judgment [doc. # 26] is DENIED. The Court expresses no opinion here regarding the remaining federal-law and state-law claims in Mr. Kohlhagen's Complaint, and no opinion regarding the merits of the ethics complaint against Mr. Kohlhagen.

IT IS SO ORDERED.

/s/ Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: October 7, 2010.**